Jesse Wyngaard, *et al.*,

                                           Plaintiffs,      Case No. 19-CV-493

     v.

                                **MINUTE SHEET AND MINUTE ORDER**

Woodman's Food Market Inc,

                                           Defendant.

---

**Hon. Nancy Joseph, presiding.**          **Deputy Clerk:** Ross Miller

**Type of Proceeding:** STATUS CONFERENCE

**Date:** August 1, 2023 at 1:30pm          **Court Reporter:** Liberty

**Time Commenced:** 1:34pm               **Time Concluded:** 4:37PM

**Appearances:**    **Plaintiff:**    David Potteiger

                         **Defendant:**  Geoffrey Trotier

**Comments:**

Presently before the Court are the Consolidated Plaintiffs' Motions to Compel Discovery and For Discovery Sanctions (Docket # 262) and Defendant's Expedited Motion for a Protective Order (Docket # 281). Also, Consolidated Plaintiffs' recent letter to the Court regarding the status of the Defendant's discovery regarding the opt-in individuals. (Docket # 285).

The Court began by discussing the issues raised by the Plaintiffs' in their motion to compel. (Docket # 262).

**1. ISSUES RELATED TO PLAINTIFF WYNGAARD'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

Plaintiffs challenge Woodman's responses to Interrogatories Nos. 7-9 and 11-13 and Requests for Production Nos. 12-17 from Plaintiff Wyngaard's First Set of Interrogatories and Requests for Production of Documents. These requests can be broken into two general categories: (1) information regarding extra compensation (such as bonuses) and (2) information regarding Woodman's policies and procedures regarding breaks/meal periods.

    **1.1    ISSUE ONE - EXTRA COMPENSATION**

This issue corresponds to Interrogatories Nos. 7-9 and RPD Nos. 12-14. Per Plaintiffs' brief, they argue that as to the Interrogatories, Woodman's did not respond at all, simply stating that "non-privileged responsive documents responsive to the interrogatory will be produced"; however, Woodman's has not, in fact, produced anything responsive. Plaintiffs argue that as to the requests for production, Woodman's produced only 5 docs in response to Nos. 12-14. Plaintiffs assert that Woodman's did not make an unequivocal representation that it conducted a diligent search of responsive documents in its possession. In its brief,

Woodman's argues that the Court already considered and denied Plaintiff's motion (Docket # 234) and that the issues were not properly raised in the meet and confer.

At the hearing, Plaintiffs clarified that they are looking for Woodman's to identify any sort of additional compensation, such as attendance bonuses, new hire bonuses, etc., and to either articulate in a written response to the interrogatory the eligibility requirements for receiving these bonuses, or to point them to specific Bates numbers for documents that explain the same. Plaintiffs argue that this information is relevant for determining whether the bonuses are either discretionary or non-discretionary. Woodman's argues that this information has been provided through depositions taken and other documents produced.

**THE COURT ORDERS AS FOLLOWS:**

- **As an initial matter, regarding Woodman's argument that the Court previously denied Plaintiff's motion, Judge Pepper denied the motions without prejudice because the three cases were being consolidated and it was possible some of the information for Wyngaard would come with discovery as to the other two plaintiffs. To be clear, Judge Pepper did not comment on the merits of the motion.**
- **For the Interrogatories, Woodman's is ordered to provide Plaintiffs with the following information: (1) a list of each type of bonus, by name if possible and (2) a description, either in writing or by citation to a document (by Bates number or some other specific identifying manner) that explains the eligibility requirements.**
- **For the Requests for Production, Plaintiffs are ordered to make a list of all outstanding documents they believe are still missing and provide this list to Woodman's. To the extent Woodman's contends a document has already been produced, Woodman's is ordered to respond by stating the date it was produced and identify, by Bates Number or otherwise, the responsive documents produced. To the extent Woodman's has not produced a responsive document, Woodman's is ordered to produce it. Plaintiffs will provide its list to Woodman's by the end of the week, August 4, 2023.**
- **As to all its outstanding discovery responses and production, Woodman's must produce the information by August 15 and provide the Court with a status of its compliance by August 15. If Woodman needs more time to comply, it must indicate so in the status report and request additional reasonable time to complete this task.**

### 1.2 ISSUE TWO - POLICIES AND PROCEDURES RE BREAKS/MEALS

This issue corresponds to Interrogatories Nos. 11-13 and RPD Nos. 15-17. Per the briefs, Plaintiffs argue that Woodman's answered the interrogatories both with the same "non-privileged docs will be produced" language, but also has a couple of sentences regarding how employees punch in and out and otherwise report their work hours. Plaintiffs argue that only 3 docs were produced in response to RPD Nos. 15-17.

At the hearing, Plaintiffs argued that Woodman's provided no supplementation, so they do not know which documents to review that may be responsive. Plaintiffs argue that under FRCP 33(d), they need some specificity as to where the answers to the questions can be found. Woodman's argues that it has produced relevant documents.

**THE COURT ORDERS AS FOLLOWS:**

- **Woodman's is ordered to supplement its discovery responses by specifying, by Bates number or some other identifying manner, what specific documents contain whatever policy or procedure is**

2

Case 2:19-cv-00493-PP-NJ   Filed 08/02/23   Page 2 of 9   Document 287

being identified. For example, if a policy or procedure X can be found in the employee handbook, this should be articulated.
- **Once again, Woodman's must comply by August 15, 2023, and update the Court on its compliance. If Woodman needs more time, it may request additional reasonable time to complete the task.**

2. **ISSUES RELATED TO PLAINTIFF WYNGAARD'S SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

Per Plaintiffs' brief, these discovery requests were served on Nov. 25, 2020 and address Wyngaard's statutory period of April 5, 2016 until April 5, 2019, the earliest of the three consolidated cases. The Second Set of Interrogatories and Requests for Production of Documents consist of Interrog. Nos. 14-18 and RPD 19-36. Plaintiffs argue that for the first time on June 7, 2023, Woodman's produced 14,000 emails. Plaintiffs argues that some docs are likely responsive to the second discovery requests, however, Woodman's has not provided written responses to the requests.

At the hearing, Plaintiffs state that Woodman's has provided no responses to these discovery requests.

**THE COURT ORDERS AS FOLLOWS:**

- **Woodman's is ordered to provide responses to these discovery requests. To the extent Woodman's has already provided a response as part of discovery requests for the Consolidated Plaintiffs, Woodman's must specifically state as such.**
- **As to any responses not yet provided, once again, the same August 15 deadline applies.**

3. **ISSUES RELATED TO CONSOLIDATED PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Per the Plaintiffs' brief, these discovery requests were served on March 6, 2023 and address the statutory period for all three consolidated plaintiffs, so from April 5, 2016 to present. Woodman's provided answers on May 8, 2023 and amended answers on May 19, 2023.

Plaintiffs challenge Woodman's responses to Interrogatories Nos. 4, 5, 6, 7, 9, 10, 12. These requests can be broken down into two categories: (1) information regarding the manner in which straight time compensation and overtime compensation is calculated and (2) information regarding additional compensation paid to Store Employees during the applicable statutory period.

### 3.1 ISSUE ONE - STRAIGHT TIME AND OVERTIME COMPENSATION

This issue corresponds to Interrogatories Nos. 4 and 5. The questions ask to describe in detail how Woodman's calculated straight time and OT compensation in both Illinois and WI. Woodman's responds by saying that it utilizes Ceridian, a third party vendor, to calculate and distribute its payroll and that Kristin Popp at Woodman's is the most knowledgeable employee. Popp has been deposed. Plaintiffs say this response is insufficient, arguing that while the response answers *who* calculates straight time compensation and overtime compensation, it does nothing to describe *how* straight time compensation and overtime compensation is calculated.

At the hearing, Woodman's argues that this information is outsourced to Ceridian; thus, if Plaintiffs want the most accurate response, they should get it direct "from the horse's mouth," i.e., Ceridian. The parties dispute who should bear the burden and cost, however, of obtaining this information from Ceridian.

**THE COURT ORDERS AS FOLLOWS:**

- **Woodman's is ordered to supplement its discovery responses by obtaining information from Ceridian regarding how straight time and overtime compensation is calculated. Plaintiffs accept that they are getting the information "second hand" through Woodman's, rather than going directly to the source, Ceridian.**
- **Plaintiffs will attempt to make their questions as clear and specific as possible. For example: How does Ceridian calculate employee's straight time earnings each workweek?**
- **The same goes for the overtime compensation equation. Plaintiffs must make the question as specific as possible for Ceridian to answer, i.e., How does Ceridian calculate employee's regular rate of pay for OT purposes?**

### 3.2 ISSUE TWO - ADDITIONAL COMPENSATION

This issue corresponds with Interrogs. 6-7, 9-10, and 12. As with Wyngaard's 1st set of discovery requests, these address extra compensation, such as discretionary bonuses (questions 6 and 7) and policies and procedures regarding meal periods and breaks (questions 9-10, 12). Per the brief, Woodman's objects to these interrogatories as unduly cumulative to the Sept. 23, 2019 Wyngaard requests. Plaintiffs argue that although this discovery requests ask basically the same questions as the ones in Wyngaard, the Consolidated Plaintiffs' requests are distinct, most notably because each case has a different applicable time period.

**THE COURT ORDERS AS FOLLOWS:**

- **Woodman's is ordered to respond to these Interrogatories, noting that it covers the entire statutory time period.**
- **Woodman is ordered to respond subject to the same August 15 deadline and status report.**

### 4. ISSUES RELATED TO CONSOLIDATED PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

These discovery requests were served on March 6, 2023 and address the statutory period for all three consolidated plaintiffs, so from April 5, 2016 to present. Plaintiffs challenge Woodman's responses to RPD Nos. 1-2, 7-12, 15-23, 25-30, 47, 55.

These requests can be broken down into four categories:

(1) discovery regarding opt-in plaintiffs (request nos. 7-12)
(2) discovery regarding employee handbooks and draft handbooks (request nos. 15-16)
(3) discovery regarding nondiscretionary compensation, meal periods and/or rest periods of short duration, timekeeping, timeclock rounding, and attendance (request nos. 17-21)
(4) discovery that Woodman's has not answered based on the amount of responsive documents being "voluminous" (request nos. 1-2, 22-23, 25-30, 47 and 55)

### 4.1 ISSUE ONE - OPT-IN PLAINTIFFS

Per the briefs, Woodman's initially objected to these requests based on the issue that was subject to the last discovery motion, i.e., since Plaintiffs took the position that the opt-in plaintiffs were not subject to written discovery and thus would not answer Woodman's discovery requests, Woodman's took the position that it too would not respond to Plaintiffs' discovery requests regarding the opt-in plaintiffs until the issue was resolved by the Court. Based on the June 12, 2023 ruling that opt-in plaintiffs were subject to discovery, Woodman's now asserts that it has begun assessing the best way to collect and produce the information regarding the opt-ins that it has. Woodman's argues, however, that much of its information will depend on how the Plaintiffs respond to Woodman's discovery requests, so Plaintiffs should wait on getting responses to their discovery requests until Woodman's gets its responses from Plaintiffs. Plaintiffs reply that there is no reason for Woodman's to wait to respond until Plaintiffs respond. They argue the information is in Woodman's custody and control, and delaying production is being used as retribution for the Plaintiffs' previous argument objecting to the opt-in discovery.

Plaintiffs now also raise issues with Woodman's amended discovery requests regarding the opt-in individuals, stating that Woodman's has not narrowed the questions to the issues related to the certification issue, as stated in the Court's previous order. (Docket # 285).

Given Woodman's position that it will not respond to Plaintiffs' discovery on the opt-ins until Plaintiffs respond to Woodman's discovery, and given Plaintiffs' position that Woodman's discovery requests are too broad, the parties are stuck in a standstill on this discovery.

At the hearing, the parties addressed specific information Plaintiffs are requesting regarding the opt-ins, such as orientation quizzes, orientation checklists, attendance records, pay-run history reports, discipline reports, and raw punch reports.

As an initial matter, of the approx. 700 opt-in individuals, approx. 120 remain that Woodman's is having difficulty identifying. Plaintiffs state that they should have this clarified by the end of this week.

Regarding the specific categories of information:

Pay-run history and raw punch reports: Woodman's states that it has started working on compiling this, it may be completed for some opt-ins, but counsel needs to confirm. To the extent any are confirmed, Woodman's should turn the information over to the Plaintiffs.

Orientation checklists and quizzes: Plaintiffs are trying to ascertain whether these are the same thing given to all employees. Woodman's argues that obtaining all of these is unduly burdensome and out of proportion to the needs of the case as much information is contained in physical files off-site. Woodman's contends that deposition testimony confirms that all employees are subject to the same policies.

Attendance/discipline reports: Plaintiffs argue that attendance was figured into bonuses and argues individuals were disciplined for taking a few seconds longer for their break. Plaintiffs argue that attendance reports show that a "point" was assessed, but does not explain why it was assessed, whereas the no-fault attendance records contain codes that explain why the "point" was assessed.

**THE COURT ORDERS AS FOLLOWS:**

- **Regarding the attendance records, Woodman's is ordered to begin with what the Dayforce software generates and provide this information to Plaintiffs. To the extent relevant documents pre-date Woodman's use of Dayforce, requiring it to go back through physical files to obtain the**

5

relevant information, the parties must re-confer once it is known where the information is located and the burden of obtaining it. The Court cannot make a ruling on obtaining this discovery until more information is known. Thus, if Woodman's search reveals the need to go back through physical files, the parties must first discuss whether they can agree on a method of production. If they are unable to, then they can request the Court's assistance.
- **As to the orientation quizzes and checklists, the Court cannot rule on this issue until it has a basic understanding of what information exists and in what form. The parties are ordered to confer and address this issue with the Court at a later date if the parties are unable to reach an agreement. Plaintiffs noted at the hearing that for the checklists, it may be sufficient to have drafts for each year.**
- **As to the pay-run history and raw punch reports, Woodman's is ordered to turn over what it already has (to the extent it is complete for any individuals) and to continue compiling this information and turning it over to Plaintiffs on a rolling basis as it is completed and received.**
- **Regarding Plaintiffs' letter regarding Woodman's discovery requests to the opt-in individuals, the parties are ordered to confer regarding the information relevant and necessary for the certification issues consistent with the Court's previous order.**

## 4.2 ISSUE TWO - EMPLOYEE HANDBOOKS AND DRAFTS

Per the briefs, Plaintiffs seek any and all employee handbooks, as well as draft versions. Plaintiffs contend that Woodman's has failed to produce employee handbooks for calendar years 2020, 2021, 2022, or 2023 and further failed to produce "draft and/or redlined versions thereof." Plaintiffs assert that Woodman's revises its handbook annually, so there should be multiple versions in existence. As to the draft versions, Woodman's argument in opposition is based on relevancy. Woodman's states that: Draft handbooks or policies are not relevant as they were never used by Woodman's and would not have been enforced against Plaintiffs. Further, to the extent Plaintiffs are fishing for evidence that Woodman's considered changing its policy because it believed the prior one to be unlawful, such evidence would not be admissible as a subsequent remedial measure. Plaintiffs argue that Woodman's is confusing admissibility with discoverability. They argue that the drafts are relevant to Woodman's SOL defense—it could show willfulness of the alleged misconduct (under the FLSA, it has a two-year SOL generally, but for willful conduct the SOL is three years).

At the hearing, Woodman's states that its handbook has not been revised since 2019, so there are no new handbooks for 2020-2023. Thus, the issue regarding the unproduced handbooks is resolved.

Regarding the drafts, Plaintiffs seek information regarding revisions and modifications of the policies and procedures, specifically communications regarding revisions of the handbook. Plaintiffs gave the example of the attendance bonus being discontinued after 2019 and it seeks information that discusses, for example, why it was discontinued.

Woodman's argues that the draft handbooks are irrelevant and again contends that they are inadmissible as subsequent remedial measures. Plaintiffs argue that the subsequent remedial measure rule does not apply in FLSA cases.

**THE COURT ORDERS AS FOLLOWS:**

- **Regarding the Rule 407 issue, the Court is not ruling on the admissibility of any draft or red-line versions or communications regarding revisions and modifications to Woodman's policies and procedures. Plaintiffs should be aware, however, that while they cite to a Fifth Circuit case that**

declined to apply Rule 407 in the FLSA context (Docket # 275 at 13), there are other courts that have applied this rule in the FLSA context. *See Smith v. Fam. Video Movie Club, Inc.*, No. 11 C 1773, 2017 WL 568992, at *3 (N.D. Ill. Feb. 13, 2017) ("As such, the Court finds that the Time Study is a subsequent remedial measure falling within the scope of Rule 407. Plaintiffs are accordingly barred from using the Time Study for the purpose of proving Family Video's liability."); *Torres v. Rock & River Food Inc.*, No. CV 15-22882, 2016 WL 4440509, at *1 (S.D. Fla. Aug. 19, 2016) (holding that Rule 407 barred evidence of defendants' new timecard and record-keeping procedures for purposes of proving liability in FLSA collective action). Plaintiffs present no binding authority that Rule 407 does not apply in the FLSA context.

- **I find that the draft/red-lined versions of the handbooks and/or communications regarding revisions and/or modifications of the handbooks relevant and discoverable.**
- **Woodman's is ordered to ascertain whether there are any responsive documents. If Woodman's finds responsive documents, the parties are ordered to meet and confer as this could raise issues regarding privileged communications, assuming the information came from Woodman's counsel.**
- **If, after the parties confer, disputes remain regarding production of these documents, the parties can raise the issue with the Court.**

### 4.3 ISSUE THREE - NONDISCRETIONARY COMPENSATION, ET AL.

This issue relates to RPD Nos. 17-21 and seeks various documents regarding nondiscretionary compensation, meal periods and/or rest periods of short duration, timekeeping, timeclock rounding, and attendance. Per their brief, Plaintiffs argue that while Woodman's previously produced these documents for the 2016, 2017, 2018, and 2019 calendar years, it has not produced documents responsive to the Hunter or Robertson statutory periods, i.e., 2020 to present. Plaintiffs give these specific examples that Woodman's allegedly failed to produce: Wage and Benefit Handbooks for the 2020, 2021, 2022, and 2023 calendar years; Employee Appreciation Holiday Bonus flyers for the 2019, 2021, and 2022 calendar years; and New Hire Bonus flyers for the 2020, 2021, 2022, and 2023 calendar years. In its brief, Woodman's responds that it did produce relevant documents, and noted the Bates Nos. in its response. Woodman's argues that Plaintiffs have had these documents for years and are only now asserting that they are "evasive and unresponsive."

At the hearing, Plaintiffs state they want to know if any of these documents are vetted by in-house counsel or others and any changes made to these policies and documents.

**THE COURT ORDERS AS FOLLOWS:**

- **For documents for 2019-2023, the parties are ordered to complete and exchange inventories regarding what Plaintiffs believe remains outstanding. Again, Plaintiffs should be as specific as possible. Woodman's must respond to Plaintiffs' inventory by stating, for example, whether or not the missing documents have been revised, whether or not they exist, etc.**
- **Should issues remain after conferring and making a good faith effort to complete what remains outstanding, then the parties can raise the issue again with the Court.**

### 4.4 ISSUE FOUR - VOLUMINOUS RECORDS

This issue relates to RPD Nos. 1-2, 22-23, 25-30, 47 and 55. Plaintiffs argue that these are multiple other requests that Woodman's responded to by stating that "due to the volume of documents potentially responsive to this request, responsive documents will be produced at a mutually convenient date." Plaintiffs assert that Woodman's has yet to produce any responsive documents for these requests. Woodman's

contends that it produced 7,168 documents on Wednesday, June 7, 2023, and 157 documents Friday, June 16, 2023 and in total, has produced 7,423 documents (39,802 pages). Plaintiffs reply that if the docs already produced are the only responsive ones within Woodman's possession and control, Woodman's should supplement its responses to indicate the same.

At the hearing, the parties indicated that there could be some overlap with emails already produced.

**THE COURT ORDERS AS FOLLOWS:**

- **As the parties indicate that some responsive documents have likely been produced and some remain outstanding, Plaintiffs should speak very specifically about what they are looking for and the parties should confer about what remains outstanding. Regarding Woodman's email search, Woodman's agrees to share with Plaintiffs the search terms it used in conducting its search to produce responsive emails.**
- **Should issues remain after conferring and making a good faith effort to complete what remains outstanding, then the parties can raise the issue again with the Court.**

5.  **OTHER MISCELLANEOUS ISSUES PLAINTIFFS RAISE IN THEIR MOTION**

Plaintiffs raised several other issues in their brief, including: Woodman's boilerplate objections; Woodman's objections based on atty-client privilege or work product; and Sanctions.

At the hearing, Plaintiffs agreed that the Court need not address the issues with Woodman's objections. While the Court did not specifically address Plaintiffs' request for sanctions, I noted on the record that this hearing should act as a re-set for the parties. This case has been pending since 2019 and it behooves both parties to move this case forward. Sanctions will not be awarded at this time; however, the parties are reminded that communication, cooperation, and civility are expected of the parties in this process.

6.  **DEFENDANT'S MOTION FOR PROTECTIVE ORDER (DOCKET # 281)**

Plaintiffs seek to depose Woodman's General Counsel, Attorney Eagle Kjome. Woodman's objects to the deposition and moves for a protective order. While Plaintiffs acknowledge the issue of privileged communications, they argue that any business advice she gave would not be privileged.

The Court expressed concern over the thin line between General Counsel's giving of "legal" and "business" advice.

**THE COURT ORDERS AS FOLLOWS:**

- Given the amount of discovery outstanding, the Court will hold this motion in abeyance. After Plaintiffs collect the additional information, they can update as to whether it is still necessary to depose Attorney Kjome and the scope of the deposition.
- The Court also indicated that it may set a future deadline for Woodman to state whether it is pursuing a Good Faith defense of reliance on advice of counsel as this may inform whether the deposition of General Counsel is relevant and necessary. The parties are encouraged to continue to confer regarding this issue to avoid any unnecessary depositions or later unfair surprise.

Finally, the parties raised the two motions brought regarding amended the scheduling order in this case, Docket Nos. 278 and 279. This Court is tasked with addressing the parties' discovery disputes and cannot

change Judge Pepper's set deadlines. Thus, the parties should address these concerns to Judge Pepper's chambers.