UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

JESSE WYNGAARD,
on behalf of himself and
all others similarly situated,                    Case No. 19-CV-0493

    Plaintiff,

    v.

WOODMAN'S FOOD MARKET, INC.

    Defendant.

---

MARY HUNTER and
JACLYN BEEGUN
on behalf of themselves and
all others similarly situated,                    Case No. 21-CV-0094

    Plaintiffs,

    v.

WOODMAN'S FOOD MARKET, INC.

    Defendant.

---

TERRY ROBERTSON and
RAY BARNES,
on behalf of themselves and
all others similarly situated,                    Case No. 22-CV-0207

    Plaintiffs,

    v.

WOODMAN'S FOOD MARKET, INC.

    Defendant.

## REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW COME the named plaintiffs, Jesse Wyngaard, Mary Hunter, Jaclyn Beegun, Terry Robertson, and Ray Barnes ("Plaintiffs"), on behalf of themselves and the collectives and subclasses whom they represent, by and through their attorneys, Walcheske & Luzi, LLC, and as and for their *Reply Brief in Support of Motion for Partial Summary Judgment,* Plaintiffs submit the following arguments for this Court's consideration.

## INTRODUCTION

In their principal brief, Plaintiffs made a *prima facie* case that established Defendant, Woodman's Food Market, Inc.'s, liability under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), Wisconsin's Wage Payment and Collection Laws, WIS. STAT. § 109.01, *et seq*., WIS. STAT. § 104.01, *et seq*., WIS. STAT. § 103.001, *et seq*., and WIS. ADMIN. CODE § DWD 274.01 *et seq*., (collectively "WWPCL"), the Illinois Minimum Wage Law, 820 ILCS 105/12*, et seq*. ("IMWL"), and Illinois' Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.,* and ILL. AMIN. CODE 300, *et seq*. ("IWPCA"). (ECF Nos. 247-249, *passim*.)

Specifically, Plaintiffs provided uncontroverted evidence in the form of business records, deposition transcripts taken of Defendant's management team, and sworn testimony from hundreds of Store Employees that demonstrate Defendant's liability by: (1) excluding nondiscretionary compensation from Store Employees' regular rates of pay when calculating overtime premium compensation in violation of the FLSA, WWPCL, and IMWL; (2) unlawfully shaving Store Employees' pre-, post-, and in-shift hours worked to Store Employees' detriment in violation of the FLSA, WWPCL, IMWL, and IWPCA; and (3) failing to compensate Wisconsin Store Employees for compensable meal periods in violation of the WWPCL. (*Id.*)

In response, Defendant failed to raise any *genuine* issue of *material* fact that would necessitate a trial as to its liability under FLSA, WWPCL, IMWL, or IWPCA. Therefore, this Court should grant Plaintiffs' *Motion for Partial Summary Judgment,* solely as to Defendant's liability.

## ARGUMENT

I. **DEFENDANT FAILED TO INCLUDE NONDISCRETIONARY BONUSES IN STORE EMPLOYEES' REGULAR RATE OF PAY FOR OVERTIME PREMIUM COMPENSATION**

In their principal brief, Plaintiffs made a *prima facie* case establishing that Defendant's Attendance Bonuses, New Hire Bonuses, and Employee Appreciation Holiday Bonuses were nondiscretionary payments that Defendant unlawfully excluded from Store Employees' regular rates of pay when calculating overtime premium compensation in violation of the FLSA, WWPCL, and IMWL. On this issue, Defendant failed to raise any genuine issue of material fact necessitating a trial as to its liability.

To begin, Defendant failed entirely to present any evidence or raise any arguments with respect to Defendant's Attendance Bonuses or New Hire Bonuses. As a result, this Court should find, as a matter of law, that Defendant violated the FLSA, WWPCL, and IMWL by excluding Attendance Bonuses and New Hire Bonuses from Store Employees' regular rates of pay when calculating overtime premium compensation.

Turning next to Defendant's Employee Appreciation Holiday Bonus, Defendant bears the burden at trial to establish that said bonus is, *in fact,* discretionary and properly excluded from the regular rate. *See e.g., Herman v. Anderson Floor Co.*, 11 F.Supp. 2d 1038, 1045 (E.D. Wis. 1998). At this stage, Defendant is required to present evidence which, if unrebutted, would sufficiently establish each material element of the statutory exclusion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Defendant failed to do so.

A discretionary bonus must meet *all* of the following criteria to be excluded from the regular rate of pay for overtime premium compensation purposes:

> (1) the employer must retain discretion as to payment; (2) the employer must retain discretion as to amount; (3) the employer must retain discretion with regard to the payment until near the end of the period which it covers; ***and***, (4) the payment must not be paid pursuant to any prior contract, agreement or promise causing the employee to expect such payments regularly.

*Herman,* 11 F.Supp. 2d at 1043 (emphasis added).

Defendant's inability to present any evidence regarding *Herman's* fourth factor is fatal to its defense. Indeed, the record indicates that the Employee Appreciation Holiday Bonus was paid pursuant to a promise causing Store Employees to expect a bonus payment if they met the announced criteria.

As testified by Defendant's Executive Vice President, Kristin Popp, the purpose of the Employee Appreciation Holiday Bonus is "to reward good attendance during a specified period of time," and the purpose of announcing the bonus to Store Employees, is to make Store Employees "**aware that if they meet the criteria that they will get a bonus**." (PPFF, ¶¶ 137-140.) This testimony establishes Defendant's intent to create an expectation of payment among Store Employees so that they are incentivized to maintain good attendance during the holidays.

Defendant argues that the fact that 44.6% of its Store Employees "never received this bonus [Employee Appreciation Holiday Bonus] during the relevant period" evinces the discretionary nature of the payment. (ECF No. 388, p. 4.) Even if true, this fact is *immaterial*. Defendant does not proffer any evidence that would indicate whether the 44.6% of Store Employees who did not receive the bonus met the announced criteria. As such, no material facts can be gleaned from this statistic.

In addition, Defendant failed to establish that its Employee Appreciation Holiday Bonus may nevertheless be excluded from Store Employees' regular rates of pay for overtime premium

compensation pursuant to 29 C.F.R. § 778.210. "Under section 778.210, a bonus paid as a predetermined percentage of an employee's ***total compensation*** – including straight time, overtime, ***bonuses***, and commissions – increases the ***total earnings*** by the same percentage, and thereby includes proper overtime compensation as an arithmetic fact." DOL Opinion Letter, FLSA2006-4NA (emphasis added). Defendant does not dispute that Attendance Bonuses and New Hire Bonuses are excluded from the formula for calculating the Employee Appreciation Holiday Bonus. Thus, it is irrefutable that Defendant's Employee Appreciation Holiday Bonus is not paid as a predetermined percentage of Store Employees "total earnings" as required by 29 C.F.R. § 778.210.

Defendant's Attendance Bonuses, New Hire Bonuses, and Employee Appreciation Holiday Bonuses were nondiscretionary payments that Defendant excluded from Store Employees' regular rates of pay when calculating overtime premium compensation in violation of the FLSA, WWPCL, and IMWL. Defendant failed to raise any genuine issue of material fact necessitating a trial as to its liability. As a result, this Court should grant Plaintiffs' *Motion for Partial Summary Judgment.*

## II. DEFENDANT FAILED TO COMPENSATE STORE EMPLOYEES FOR ALL HOURS WORKED AS A RESULT OF TIMECLOCK ROUNDING

In their principal brief, Plaintiffs made a *prima facie* case establishing Defendant's failure to compensate Store Employees for all pre-, post-, and in-shift hours worked by implementing an unlawful rounding practice in violation of the FLSA, WWPCL, IMWL, and IWPCA. Defendant failed to raise any genuine issue of material fact in opposition. Consequently, this Court should grant Plaintiffs' *Motion for Partial Summary Judgment.*

### A. Defendant's No Fault Attendance Policy as applied with Defendant's timeclock rounding rules results in a non-neutral rounding system that violates the FLSA

With respect to Plaintiffs' FLSA claims, Defendant contends that the application of its No-Fault Attendance Policy in conjunction with "an FLSA-permitted rounding policy" does not run

5

afoul of 29 C.F.R. § 785.48(b). (ECF No. 388, p. 6.) In fact, Defendant claims that it has "only located one case discussing Plaintiffs' theory that a no-fault attendance policy in combination with a rounding policy could affect an employee's inclination to clock in early." (*Id.* at p. 7.)

Defendant's argument is odd considering that Plaintiffs cited three such cases: *Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 615 (W.D. Va. 2019); *see also, Gibson v. Outokumpu Stainless Steel USA, LLC,* 2023 WL 2604812 (S.D. Ala. Mar. 22, 2023); and *Koch v. Jerry W. Bailey Trucking, Inc.*, 482 F. Supp. 3d 784 (N.D. Ind. 2020). Defendant failed to address any of these cases.

As shown by these cases and others[1], Plaintiffs' theory of the case in this regard is hardly novel. Indeed, the United States Department of Labor merely "presumes" for "enforcement

---

[1] Elizabeth C. Tippett, *How Employers Profit from Digital Wage Theft Under the FLSA*, 55 Am. Bus. L.J. 315, 352-353 (2018) (collecting cases, "*Kelly v. Healthcare Servs. Grp., Inc.*, No. 2:13-CV-00441-JRG, 2015 WL 3464131, at *3 (E.D. Tex. June 1, 2015) (impact of rounding a question of fact); *Bobryk v. Durand Glass Mfg.*, 50 F. Supp. 3d 637, 642 (D.N.J. 2014) (granting collective certification based on seven-minute rounding rule where plaintiffs' declarations "support plaintiffs' contentions that they engaged in some work" before and after their shifts); *Eddings v. Health Net. Inc.,* No. CV-10-1744, 2012 WL 994617, at *4 (C.D. Cal Mar. 23, 2012) (rounding system "creates a genuine issue of material fact, both as to the facial neutrality… and to the effects of its application"); *Sloan v. Renzenberger, Inc.*, No. 10-2508, 2011 WL 1457368, at *3 (D. Kan Apr. 15, 2011) (finding plaintiffs made a sufficient showing at the conditional certification stage of a common rounding policy and "pre-shift policies that require employees to be present and/or perform work without compensation"); *Shockey*, 730 F. Supp 2d at 1302 (plaintiff presented substantial evidence of off-the-clock work that was "a necessary and integral part of [declarants'] job," which was rounded away by employer); *Russell v. Ill. Bell Tel. Co.,* 721 F. Supp. 2d 804, 819-20 (N.D. Ill. 2010) (in ruling on motion to decertify, rejecting defendant's argument that its rounding policy was "not per se unlawful," while also declining to rule on the merits); *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912, 933 (N.D. Ill. 2003) (denying defendant's motion for summary judgment, finding a genuine issue of material fact as to whether rounding failed to compensate employees for time worked); *Hodgson v. Leeco Gas & Oil Co.*, No. 71-562-Civ, 1972 WL 962, at *3 (M.D. Fla. Oct. 12, 1972) (finding of fact that employees not fully compensated for all time worked under rounding policy).

\*\*\*

*Bobryk*, 50 F. Supp 3d at 642 (granting collective certification based on seven-minute rounding rule where plaintiffs' declarations "support plaintiffs' contentions that they engaged in some work" before and after their shifts); Binissia, 20145 WL 793111, at *4 (crediting Plaintiffs' ninety-four declarations that they began work upon clocking in. "At this preliminary stage, it would serve no purpose to require Plaintiffs to submit an affidavit from a janitor at every ABM location simply to establish the unremarkable proposition that janitors typically begin working once they punch in."); *Nicholson v. UTI Worldwide, Inc.* No. 3:08-CV-722, 2011 WL 1775726, at *8 (S.D. Ill. May 10, 2011) (granting class certification where plaintiff presented evidence that rounding produced off-the-clock work, finding that "Nicholson alleges a common, state-wide, uniform policy of mandating work after employees have clocked in but before the shift begins, and then systematically truncating that and other time worked … from employees' paid hours"); *Sloan*, 2011 WL 1457368, at *3 (finding plaintiffs made a sufficient showing at the conditional certification

purposes" that a facially neutral rounding policy is lawful so long as it is "used" in a manner in which "employees are fully compensated for all the time they actually work." This language unambiguously indicates that a rounding system that includes a neutrally programmed timeclock may nevertheless be converted to a non-neutral rounding system when it is "used" in a manner that disproportionately benefits an employer.

Here, Plaintiffs presented evidence that rebuts the presumed neutrality of Defendant's timeclock rounding by establishing that, in practice, Defendant's timekeeping system is "used" in a manner that disproportionately benefits Defendant. Plaintiffs' expert's analysis of Defendant's timekeeping records revealed that every year the *Wyngaard*, *Hunter*, and *Robertson* Collectives' rounded time was significantly less than their raw time. (PPFF, ¶¶ 66-67.) Collectively, the 739 Opt-In Plaintiffs' rounded time was <u>14,611 hours less</u> than their raw time. (*Id*. at ¶ 66.) Moreover, just 13 of the 739 Opt-In Plaintiffs benefitted in any year from Defendant's timeclock rounding practice, gaining less than 16 total hours, *i.e.* less than 0.10% of the amount of time lost. (*Id*. at ¶ 67.)

This evidence establishes that Defendant's timeclock rounding system was not "used" in a neutral manner because *any* pre- or post-shift work performed by Store Employees was systematically and uniformly disregarded and, thus, uncompensated. While the amount of pre-,

---

stage of a common rounding policy and that "pre-shift policies that require employees to be present and/or perform work without compensation"); *Smith v. Safety-Kleen Sys., Inc*., No. 10 C 6574, 2011 WL 1429203, at *3 (Ap. 14, 2011) (granting collective certification based on allegations that rounding policy and punch restrictions deprived plaintiffs of compensation for donning and doffing protective equipment); *Shockey*, 730 F. Supp. 2d at 1302 (plaintiff presented substantial evidence of off-the-clock work that was "a necessary and integral part of [declarants'] job" that was rounded away by employer); *Russell*, 721 F. Supp. 2d at 810 (requiring call center employees "to be 'open and available' [to incoming calls] until fifteen seconds remain on their shift…. As a result, some plaintiffs testified they often work past the end of their tour answering calls. Illinois Bell's overtime payment policies provide that work completed in less than eight minutes is unpaid."); *Fisher v. Mich. Bell Tel. Co*., 665 F. Supp 2d 819, 826 (E.D. Mich. 2009) (granting conditional certification where plaintiffs showed that rounding policy disadvantaged call center workers forced to take calls at the end of their shifts); *Longerier v. HI-A Co*., 595 F. Supp. 2d 1218, 1236 (S.D. Ala. 2008) (granting conditional certification where "each of those 30 actual or potential plaintiffs state that he or she typically began work immediately upon clocking in, but was not paid until the start of his or her shift")."

post- and in-shift hours worked by Store Employees which Defendant failed to compensate is a matter of damages, the extent of damages is not the subject of Plaintiffs' *Motion for Partial Summary Judgment*. Plaintiffs have conclusively established that Defendant's No Fault Attendance Policy taken in conjunction with its timeclock rounding rules violates the neutrality requirement of 29 C.F.R. § 785.48(b).

> **B. The undisputed facts dictate that Store Employees were performing compensable pre- and post-shift work**

Defendant argues that Plaintiffs have failed to establish that "members of the collective were doing compensable work during the rounded time." (ECF No. 388, p. 6.) Defendant's position is unsupported and undeveloped, meriting only brief discussion.

The record shows that Defendant required Store Employees to clock in between one and five minutes prior to their scheduled shift start time. (PPFF, ¶¶ 74-76.) At such time that Store Employees clock in, Defendant considers them "*on the clock working*," (*id.* at ¶ 56), and it is Defendant's expectation that Store Employees remain "*on the clock working*" until they clock out. (*Id.* at ¶ 57.) Store Employees are not permitted to clock out prior to their scheduled shift end time nor are they permitted to clock out more than seven minutes thereafter. (*Id.* at ¶¶ 77-78.) Defendant requires Store Employees to "immediately cease working" at such time as Store Employees clock out. (*Id.* at ¶ 61.)

The <u>uncontested</u> testimony from *hundreds of Store Employees* establishes that, in practice and in order to avoid discipline, Store Employees, including Plaintiffs, customarily clocked in at least one minute, but not more than five minutes, prior to their scheduled shift start times. (ECF Nos. 70-215; Potteiger Decl., Exs., 12-18.) Store Employees, including Plaintiffs, then *immediately* began performing work because if they did not, they would be subject to discipline.

(*Id*.) The only time, then, that Store Employees are not actively working was when they are clocked out, which comports with Defendant's policies. (*Id*.)

While Defendant complains that this evidence lacks credibility and should be disregarded, a witness's credibility is not assessed on summary judgment. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) ("summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe.") Indeed, this Court has one task: "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* at 920. Defendant presented *no evidence* to refute the testimony of hundreds of Store Employees that they immediately performed work after clocking in and continued to perform work until clocking out.

Defendant contends that *some,* but *not all,* of the rounded time cannot constitute hours of work under the FLSA because "walk time" was "duty free" and not compensable under 29 U.S.C. § 254(a)(1). (ECF No. 388, p. 10.) As a result, Defendant claims that walking to and from the Dayforce timeclock to a specific Store department is not compensable.

Again, how many hours constitute compensable work hours involves a calculation of damages that was not raised in Plaintiffs' *Motion for Partial Summary Judgment.* Even still, Defendant's argument is without merit.

Plaintiffs contend, *inter alia,* that "customer service" is a principal activity that Defendant hired Store Employees to perform. (ECF No. 382.) Among other "customer service" duties, Defendant *requires* Store Employees to show customers a "nice warm, sincere smile" and "greet them with 'Good Morning', 'Good Afternoon', or 'Good Evening' and say 'Thank you' and 'Have a nice day'" any time a Store Employee "*come[s] in eye contact with a customer*." (PPFF, ¶ 26.)

It is important to note that despite previously asserting that Store Employees "were employed to perform a specific task at a specific location," (ECF No. 341-1, ¶ 56), Defendant now concedes that "customer service" *is* a "primary job duty" of Store Employees. (ECF No. 387, ¶¶ 9-18.)

Because Defendant no longer disputes that "customer service" is a principal activity which Store Employees were hired to perform, it logically follows that "the actual place of performance" of Store Employees' principal activities under 29 U.S.C. § 254(a)(1), is not a designated Store department, but *any* area on the "floor" where Store Employees perform their "customer service" activities because that is where Store Employees "come in[to] eye contact with a customer."

The undisputed evidence in the record dictates that all time Store Employees spent outside of the breakroom while "on the clock" constitutes compensable working hours under the FLSA because the "floor" constitutes "the actual place of performance" of Store Employees' principal activities.

C. **The *de minimis* doctrine should not be applied in the context of this case or at this stage in the proceedings**

Defendant argues that any pre- or post-shift work performed by Store Employees is *de minimis*. Plaintiffs have fully briefed why the *de minimis* doctrine should not be applied in the context of this case or at summary judgment. (*See* ECF No. 382, p. 20.) Those arguments do not need repeated. Just one issue requires elaboration.

Defendant erroneously claims that *de minimis* time is measured individually rather than *en masse*. (ECF No. 388, p. 10.) Defendant's assertion is incorrect. Indeed, "the aggregate amount of compensable time" at issue is a factor to consider in applying the *de minimis* doctrine. *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176 (7th Cir. 2011) (citing *Lindow v. United States,* 738 F.2d 1057 (9th Cir. 1984)). Both the aggregate amount of the individual claim *and* the aggregate amount

"in relation to the total sum or claim involved in the litigation" is relevant. *Lindow,* 738 F.2d at 1063; *see also, Reich v. Monfort, Inc.,* 144 F.3d 1329, 1334 (10th Cir. 1998) ("both the aggregate claim for each individual employee as well as the aggregate claim for all the employees combined are relevant to the inquiry.")

In short, Plaintiffs did not misunderstand the relevant analysis under the *de minimis* doctrine as Defendant claims. For all reasons previously stated, the *de minimis* doctrine should not be applied in the context of this case or at this stage in the proceedings.

### D. Defendant fails to address the clear departure between federal and state law with respect to timeclock rounding

Defendant claims that Plaintiffs "appeal to the federal judiciary to create … a mandate [that] runs afoul of well-established legal principles…." (ECF No. 388, p. 15.) To the contrary, it is Defendant that, without citation to – or analysis of – Wisconsin or Illinois wage law, urges this Court to interpret pertinent state law in lock step with a federal regulation that neither Wisconsin nor Illinois adopted.

Defendant relies solely upon *dicta* in an unreported case to support its conclusion that Wisconsin law does not prohibit timeclock rounding. *Quiroga v. Olds Prod. Co. of Illinois*, 22-cv-390-SCD, 2024WL4512098 (E.D. Wis. Oct. 17, 2024). However, *Quiroga* is inapplicable to this case. First, *Quiroga* involved a procedural question, *i.e.* whether to certify a class action. The court did not reach the merits or apply 29 C.F.R. § 785.48(b) to the WWPCL. Second, in considering whether common questions predominated over individual ones, the court "supposed" that it was hypothetically possible that rounding could be lawful under Wisconsin law if the "employer implemented a rounding practice that solely benefited its employees." *Id.* at * 5. The court's *dicta* has no application here because the fully developed record in this case is at odds with the court's hypothetical: Defendant's rounding policy did not solely benefit Store Employees.

11
Case 2:19-cv-00493-PP   Filed 01/24/25   Page 11 of 15   Document 389

Defendant provides no authority to suggest that either Wisconsin or Illinois sought to make 29 C.F.R. § 785.48(b) a part of its statutory or regulatory framework or that the Wisconsin or Illinois Supreme Courts would apply 29 C.F.R. § 785.48(b) in the absence of an express directive to do so. It is, in fact, quite the opposite. *See e.g., Kieninger v. Crown Equip. Corp.,* 386 Wis. 2d 1, 23–24 (2019)*; see also, Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 115–16 (2005). As such, this Court should not consider 29 C.F.R. § 785.48(b) when analyzing whether Defendant violated Wisconsin and Illinois wage law.

\*\*\*

In conclusion, Defendant failed to raise any genuine issues of material fact with respect to its failure to compensate Store Employees for all pre-, post-, and in-shift hours worked in violation of the FLSA, WWPCL, IMWL, and IWPCA. This Court should grant Plaintiffs' *Motion for Partial Summary Judgment* on the issue of Defendant's liability. The extent to which Plaintiffs, the Opt-In Plaintiffs, and the Wisconsin and Illinois Timeshaving Subclasses have been damaged (*i.e.* how many hours of work were uncompensated due to Defendant's unlawful rounding policy) may be reserved for the jury.

### III. DEFENDANT FAILED TO COMPENSATE THE WISCONSIN MEAL PERIOD SUBCLASS FOR MEAL PERIODS AND/OR REST BREAKS OF SHORT DURATION

In its principal brief, Plaintiffs made a *prima facie* case that Defendant failed to compensate Wisconsin Store Employees for compensable meal periods in violation of the WWPCL. Defendant failed to raise any genuine issue of material fact necessitating a trial as to its liability. As a result, this Court should grant Plaintiffs' *Motion for Partial Summary Judgment.*

Defendant spends considerable effort analyzing whether Store Employees were "primarily engaged in activities that benefited Woodman's during their meal periods." (ECF No. 388, pp. 11-

13.) However, Defendant's analysis is entirely misplaced in that it is centered on whether meal periods are compensable under the FLSA, not Wisconsin law.

The proper analysis under Wisconsin law is to assess whether Defendant "provided" Store Employees with a meal period running at least 30 consecutive minutes. *See e.g., Wirth v. RLJ Dental, S.C.,* 59 F.4th 270 (7th Cir. 2023). In other words, did Defendant "relinquish control over [Store Employees'] activities and permit them a reasonable opportunity to take an uninterrupted 30-minute break," without "impeding or discouraging them from doing so." *Wirth v. RLJ Dental, S.C.,* 2022 WL 356030, *5 (E.D. Wis. 2023).

The undisputed evidence establishes that Defendant impeded and discouraged Store Employees from receiving a full uninterrupted 30-minute meal break. Regardless of what time Store Employees clock out for their meal breaks, Defendant requires them to clock back in and return to work at least one minute prior to their scheduled meal break end time – *i.e., at most,* within 29 minutes are clocking out. (PPFF, ¶¶ 101-102.) If a Store Employee fails to do so, he or she is subject to discipline in accordance with Defendant's No Fault Attendance Policy, (*id.* at ¶ 101), and can suffer deductions from their pay. (*Id.* at ¶ 111.) Indeed, Defendant trains all newly hired Store Employees to "*understand that they have a 29-minute meal period.*" (*Id.* at ¶ 96.) No reasonable interpretation of Defendant's orientation training materials or policies in practice suggests that Defendant ever "provides" a full uninterrupted 30-minute meal break.

Moreover, according to the unrefuted testimony of *hundreds of Store Employees,* as a matter of practice and in order to avoid discipline, Store Employees performed work until such time that they clocked out for their breaks and resumed work immediately after clocking back in from their breaks. (*Id.* at ¶ 108.) Moreover, Store Employees customarily clocked back in from their meal breaks and returned to a specific Store department within 30 consecutive minutes from when they first left that

department because that is exactly what Defendant's policies, procedures, and practices encouraged, incentivized, and pressured them to do. (*Id*.)

Not only does Defendant fail to refute this testimony, Defendant tacitly acknowledges that it failed to compensate Store Employees for meal breaks running less than 30 minutes. (ECF No. 388, p. 16.) Defendant concedes that even when adding *four minutes* to each meal period taken by Wisconsin Store Employees, Defendant *still* violated Wisconsin law by depriving Wisconsin Store Employees of more than 9,600 hours of compensable work (1.2% of 1,600,000 meal breaks). (*Id.*) In fact, Defendant acknowledges that even when adding ***eight minutes*** to each meal period taken by the Wisconsin Store Employees, Defendant stole 800 hours of compensable work time (0.1% of 1,600,000 meal breaks). (*Id.*)

Defendant failed to raise any genuine issues of material fact with respect to its failure to compensate Wisconsin Store Employees for meal periods running less than 30 consecutive minutes in duration. This Court should grant Plaintiffs' *Motion for Partial Summary Judgment* on the issue of Defendant's liability. The extent to which Plaintiffs and the Wisconsin Meal Period Subclass have been damaged (*i.e.* how many hours of work were uncompensated due to Defendant's unlawful conduct) should be reserved for the jury.

## **CONCLUSION**

For all of the reasons stated herein, this Court should grant *Plaintiffs' Motion for Partial Summary Judgment,* solely as to liability against Defendant, because there are no genuine issues of material fact, and Plaintiffs as well as the collectives and subclasses whom they represent, are entitled to judgment as a matter of law.

Dated this 24th day of January, 2025

                          WALCHESKE & LUZI, LLC
                          Counsel for Plaintiffs

                          **_s/ David M. Potteiger_**
                          James A. Walcheske, State Bar No. 1065635
                          Scott S. Luzi, State Bar No. 1067405
                          David M. Potteiger, State Bar No. 1067009

WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-mail: jwalcheske@walcheskeluzi.com
E-mail: sluzi@walcheskeluzi.com
E-mail: dpotteiger@walcheskeluzi.com