UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE

---

JESSE WYNGAARD,
on behalf of himself and
all others similarly situated,

Plaintiff,

v. Case No.:19-cv-0493

WOODMAN'S FOOD MARKET, INC.,

Defendant.

---

MARY HUNTER and
JACLYN BEEGUN
on behalf of themselves and
all others similarly situated,

Plaintiffs,

v. Case No. 21-CV-0094

WOODMAN'S FOOD MARKET, INC.

Defendant.

---

TERRY ROBERTSON and
RAY BARNES,
on behalf of themselves and
all others similarly situated,

Plaintiffs,

v. Case No. 22-CV-0207

WOODMAN'S FOOD MARKET, INC.

Defendant.

---

**DEFENDANT WOODMAN'S FOOD MARKET, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY THE DISTRICT COURT'S ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT (DKT. NO. 398) FOR INTERLOCUTORY APPEAL**

## INTRODUCTION

Plaintiffs allege that Woodman's underpaid them by, among other things, not compensating them for time spent walking between their workstation and the breakroom and by rounding their punch time to the nearest quarter hour. These practices, according to Plaintiffs, constitute unfair wage practices under the Fair Labor Standards Act (FLSA), Wisconsin Wage Payment and Collection Law, Illinois Minimum Wage Law, and Illinois Wage Payment and Collection Act. The Court agreed and granted Plaintiffs' motion for summary judgment on these issues. *See* Dkt. No. 398.

The summary judgment order is appropriate for interlocutory appeal. The issues the Court decided as a matter of law are deeply unsettled and control material aspects of the case. Getting these issues resolved now—as opposed to after trial, when reversal at that point would lead to a wasteful second trial—makes eminent sense. Woodman's thus moves to certify the following questions for interlocutory appeal under 28 U.S.C. § 1292(b):

1. Is walking time compensable as a matter of law under 29 U.S.C. § 254(a) when employees interact with customers while walking to and from their workstation?

2. Is a time-rounding policy, as a matter of law, not neutral under 29 C.F.R. § 785.48(b) when it results in only a *de minimis* loss to employees?

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are properly summarized in the Court's Order, Dkt. No. 398, but this Motion will briefly summarize the relevant background. Woodman's is an employee-owned

grocery store operating in Wisconsin and Illinois. *Id.* at 2. This is a class and collective action suit where Plaintiffs allege various unfair wage practices. *See id.* at 6. Relevant to this motion, Plaintiffs argue that they were consistently underpaid because of Woodman's time entry policies. *See id.*

For example, employees were required to punch in at least one minute before the start of their shift and had to punch out within three or seven minutes after the end of their shift. *Id.* at 62. To clock in or out, employees had to walk between their workstation and the breakroom. *Id.* at 28–29. As a result, there were brief periods between clocking in and starting their shift, and between ending their shift and clocking out, where employees were clocked in but not working for the benefit of Woodman's because they were only walking to and from their workstation. *See id.* at 36. During these walks, employees occasionally interacted with customers by greeting them or answering questions. *Id.* at 30. The Court granted Plaintiffs' motion for summary judgment and denied Woodman's motion for summary judgment on this issue, holding that as a matter of law, the time spent walking was compensable because providing customer service is a principal activity of the employees. *Id.* at 49.

Woodman's also had a rounding policy where an employee's punch time was rounded to the nearest quarter hour. *Id.* at 61. If an employee punched out at seven minutes or less after the quarter hour, their time would be rounded down. If an employee punched out at eight minutes or more past the quarter hour, their time would be rounded up. Woodman's argued that even if this policy did result in employees losing some time, that amount of time is not compensable under the *de minimis* exception. Dkt. No. 341 at 16. However, the Court refused to apply this exception and concluded that the rounding policy was not neutral because the employees were underpaid even if only by small amounts. *See* Dkt. No. 398 at 72. The Court thus denied Woodman's motion for

summary judgment and granted Plaintiffs' motion for summary judgment on this issue. *Id.* at 77–78.

## LEGAL STANDARD

A district court may certify an order for interlocutory appeal under 28 U.S.C. § 1292(b) when (1) there is a controlling question of law, (2) for which there is a substantial ground for difference of opinion, and (3) an immediate appeal will materially advance the ultimate termination of the litigation. *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). While interlocutory appeals are only occasionally granted, *see Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012), the Seventh Circuit has "emphasize[d] the duty of the district court . . . to allow an immediate appeal to be taken when the statutory criteria are met." *Ahrenholz*, 219 F.3d at 677.

## ARGUMENT

### I. Both issues present controlling questions of law because they depend on questions of statutory and regulatory interpretation.

A controlling question of law "refer[s] to a question regarding the meaning of a statutory or constitutional provision, regulation[,] or common law doctrine." *Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291 F.3d 1000, 1007 (7th Cir. 2002). A controlling question of law can also refer to "the application of a legal standard." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010) (collecting cases). As the Court noted in its order, whether walking time is compensable because employees answered a few customer questions and whether the *de minimis* exception applies to the time-rounding claims are fundamentally questions of statutory and regulatory interpretation. Dkt. No. 398 at 41, 70. So, these are controlling questions of law for the purposes of certification for interlocutory appeal.

## II. There is substantial ground for difference of opinion as to both issues because there is a lack of controlling Seventh Circuit precedent and other courts have reached conflicting conclusions on similar issues.

When determining whether there is a substantial ground for a difference of opinion, courts consider "the strength of the arguments in opposition to the challenged ruling." *United States v. Select Med. Corp.*, No. 312CV00051, 2017 WL 468276, at *3 (S.D. Ind. Feb. 3, 2017) (citation modified). The absence of controlling case law is a relevant, though not necessarily dispositive, consideration. *Resol. Tr. Corp. v. Gallagher*, No. 92 C 1091, 1992 WL 315218, at *6 (N.D. Ill. Oct. 23, 1992) (noting that "no circuit court ha[d] squarely addressed the issue"). But certification is particularly appropriate when, as here, courts have come to conflicting decisions on the same legal questions. *See ADP, LLC v. Ultimate Software Grp., Inc.*, No. CV168664, 2018 WL 1838003, at *5 (D.N.J. Apr. 17, 2018).

### A. Courts have largely concluded that walking time is not compensable, and the Court relied on an anomalous, unpublished, and out-of-circuit decision to deviate from this rule.

Under the FLSA, employers are not required to compensate employees for walking to and from the place of performance of their principal activity. *Chagoya v. City of Chicago*, 992 F.3d 607, 617 (7th Cir. 2021) (quoting 29 U.S.C. § 254(a)). "Principal activity" includes any activities that are "integral and indispensable to the principal activities that an employee is employed to perform." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014). The Supreme Court went on to define those words:

> The word "integral" means belonging to or making up an integral whole; constituent, component; specifically necessary to the completeness or integrity of the whole; forming an intrinsic portion or element, as distinguished from an adjunct or appendage. And, when used to describe a duty, "indispensable" means a duty that cannot be dispensed with, remitted, set aside, disregarded, or neglected. An activity is therefore integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities.

*Id.* (citation modified). But a task is not a principal activity simply because it is required by the employer. *Id.* at 36.

The Seventh Circuit has thus concluded that walking time is generally not compensable. *Sandifer v. U.S. Steel Corp.*, 678 F.3d 590, 597 (7th Cir. 2012). This Court however, departed from that rule by relying on *Finnigan v. Metropolitan Transportation Authority* to conclude that Woodman's employees are performing a principal activity by, on their way to and from their workstations, occasionally greeting customers or answering questions. 19-CV-0516, 2025 WL 963998 (E.D.N.Y. Mar. 31, 2025). Hence, there is substantial ground for differences of opinion for two reasons. First, walking time is generally not compensable under the FLSA and *Finnigan* deviated from this principle. Second, even if *Finnigan* was correctly decided, it does not support the conclusion that, as a matter of law, answering occasional questions while walking to a break is always a principal activity.

*First*, federal courts have largely concluded that walking time is not compensable. *See, e.g.*, *Castaneda v. JBS USA, LLC*, 819 F.3d 1237, 1252 (10th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (May 3, 2016); *Adair v. ConAgra Foods, Inc.*, 728 F.3d 849, 853 (8th Cir. 2013); *see also Villarino v. Pacesetter Pers. Serv., Inc.*, 161 F.4th 1270, 1277 (11th Cir. 2025) (concluding that travel time was not compensable). And courts have also found that walking time specifically to and from a lunch break is not compensable. *See, e.g.*, *Busk v. Integrity Staffing Sols., Inc.*, 713 F.3d 525, 532 (9th Cir. 2013), *rev'd on other grounds*, 574 U.S. 27 (2014); *Naylor v. Securiguard, Inc.*, 801 F.3d 501, 505 (5th Cir. 2015); *Solares v. Amazon.com Servs., LLC*, No. 2:24-CV-00881, 2025 WL 48933, at *6 (D. Nev. Jan. 8, 2025).

Instead, the Court relied on *Finnigan* to transform non-compensable walking time into compensable working time. In *Finnigan*, municipal train operators were responsible for "train

dumping": bringing the train to a stop, turning the engine off, and walking to the dispatch office to sign out. 2025 WL 963998, at *3. On this walk, employees "often provide[d] customer service." *Id.* Since "[m]ultiple operators testified that they typically answered customers' questions while walking to the dispatch office," the court concluded that there was a genuine dispute of material fact regarding whether answering questions on this walk was a principal activity. *Id.* at *5. *Finnigan* thus broke from the general rule and determined that walking time could be compensable in some instances.

This disagreement among courts puts this case directly in the heartland of a motion under § 1292(b). *See Searcy v. eFunds Corp.*, No. 08 C 985, 2010 WL 5245856, at *1 (N.D. Ill. Dec. 14, 2010) (deciding substantial grounds exist when there are cases coming to opposite conclusions on the same question). True, as the Court noted, there are no other cases analyzing the walking time issue in a retail, as opposed to manufacturing, context. Dkt. No. 398 at 43. But *Finnigan* failed to offer sufficient analysis explaining why the difference in context matters. *See generally* 2025 WL 963998, at *5. Without that analysis, it conflicts with the great weight of authority holding that walking time is not compensable. And whether a court accepts *Finnigan*'s rule is outcome-determinative. After all, walking time is either compensable under some circumstances or it isn't (as courts have generally held). But the Seventh Circuit has never, so far as counsel is aware, encountered a case like *Finnigan*, and since "out-of-circuit authority is not binding," it is not sufficient to craft a new rule that arguably conflicts with *Sandifer* and *Chagoya*. *Lange v. City of Oconto*, 28 F.4th 825, 847 (7th Cir. 2022).

Certification is particularly warranted when a district court relies on a case that is "anomalous." *See EEOC v. Bd. of Governors of State Colls. & Univs.*, No. 86 C 0295, 1989 WL 81987, at *2 (N.D. Ill. July 14, 1989). *Finnigan* is one such anomalous case since, as discussed

above, it appears that no circuit court has diverged from the general rule that walking time is not compensable. So, without further guidance from higher courts, there is a substantial ground for difference of opinion. *See, e.g.*, *Carolina Cas. Ins. Co. v. Est. of Zinsmaster*, No. 1:06-CV-33, 2007 WL 670898, at *2 (N.D. Ind. Feb. 27, 2007) ("As there is no controlling precedent from the Seventh Circuit, or any other circuit, there is a substantial ground for difference of opinion.").

*Second*, even if *Finnigan* was correct that walking time could be compensable in some circumstances, it does not follow that walking time is compensable, as a matter of law, whenever employees may encounter and interact with customers. Just because there *was* a genuine dispute of material fact in that case, does not mean that there is *no* genuine dispute of material fact in this case.

For one thing, the evidence in *Finnigan* that employees were routinely interrupted by customers was far stronger. One operator testified that "he gets a lot of people asking him questions on his walk to the dispatch office" while another testified that operators "respond to customer inquiries frequently as they walk between the train and the dispatch office." *Id.* at *3 (citation modified). And even with the strength of that evidence, the *Finnigan* court merely concluded that there was a genuine fact dispute over whether that was a principal activity.

The evidence here is much closer and disputed. For example, Woodman's cited evidence in its Proposed Findings of Fact indicating that "[a]lthough occasionally employees might be stopped by customers to answer questions, this interaction typically lasts only a few seconds up to a minute or two and is rare." Dkt. No. 341-1 at 7. Plaintiffs countered by citing contradictory evidence and concluding these interactions were "frequent." Dkt. No. 381 at 20. The Court itself cited inconsistent testimony with some testifying that they were stopped rarely or occasionally and others stating they were stopped frequently. Dkt. No. 398 at 30. Where there is conflicting

evidence, there is a genuine dispute of material fact. *See, e.g.*, *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) (Courts "will not resolve factual disputes or weigh conflicting evidence."). And courts must weigh the evidence in the light most favorable to the non-movant. *Hacker v. Dart*, 62 F.4th 1073, 1085 (7th Cir. 2023).

While *Finnigan* supports the conclusion that answering questions from customers may be a principal activity in some instances, it does not support the conclusion that it is so in every case. *See Sandifer*, 678 F.3d at 596 (noting that a principal activity is that which the employee is employed to perform). Accordingly, the Court erred by concluding that, as a matter of law, Woodman's employees were always performing a principal activity when walking to and from their workstations after punching in because they sometimes encountered customers.

So, the Court was wrong to conclude that walking time could be compensable. But even if it was right to rely on *Finnigan* and conclude that walking time could be compensable in some circumstances, its holding that answering customers' questions is a principal activity as a matter of law is further afield. The fact that there is evidence in the record that such interactions were generally rare and short support Woodman's argument that this was not a principal activity. It follows then that this is a much closer legal question that should not have been resolved at this stage. *See, e.g.*, *Panache Broad. of Pa., Inc. v. Richardson Elecs., Ltd.*, No. 90 C 6400, 1999 WL 1024560, at *5 (N.D. Ill. Oct. 29, 1999) (noting that appeal was warranted when there were "strong arguments on both sides"). Therefore, certification of an appeal is proper. *Lewis v. Am. Express Co.*, No. CV-24-03370, 2025 WL 3089002, at *5 (D. Ariz. Nov. 5, 2025) ("Courts traditionally will find that a substantial ground for difference of opinion exists where . . . the court of appeals of the circuit has not spoken on the point." (citation modified)).

### B. A time-rounding policy can be neutral when it only results in a *de minimis* underpayment.

As for Plaintiffs' time-rounding claims, there is substantial ground for difference of opinion regarding the Court's determination that the *de minimis* exception did not apply because the policy wasn't neutral. The policy was facially neutral because it could work to benefit either Woodman's or its employees. And "[m]ost courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable." *Farris v. Cnty. of Riverside*, 667 F. Supp. 2d 1151, 1165 (C.D. Cal. 2009) (quoting *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984)). So, a rounding policy can be neutral if it results in only a *de minimis* underpayment to employees.

As explained in the Court's Order, Woodman's had a policy of rounding employees' time punches to the nearest quarter hour. Dkt. No. 398 at 61. If an employee punched out seven minutes or less past the quarter hour, the time was rounded down. *Id.* If the employee punched out eight minutes or more past the quarter hour, the time was rounded up. *Id.* Employees were also instructed to punch in one minute before their listed start time to allow them to get to their workstation. *Id.* at 62.

Woodman's maintains that this walking time was not compensable. But even if it was, the *de minimis* exception applies here because the extra amount of time worked was only a few minutes per shift. During the workday, employees had to walk between one and seven minutes between their workstation and the breakroom to clock out. Dkt. No. 398 at 29. However, "89.3% of shifts had rounding of less than five minutes and none of the rounding occurred in increments larger than 10 minutes." Dkt. No. 341-6 at 10. And since the daily rounding errors were so small, Woodman's was not required to compensate employees for it.

Rounding practices like Woodman's are generally lawful when they are neutral. *See* 29 C.F.R. § 785.48(b). And under the *de minimis* exception, employers need not compensate

employees for small time-keeping errors. *See Jerzak v. City of S. Bend*, 996 F. Supp. 840, 847 (N.D. Ind. 1998). This "allows employers to disregard otherwise compensable work when only a few seconds or minutes of work beyond the scheduled working hours are in dispute." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176 (7th Cir. 2011). "When evaluating whether work performed by an employee is *de minimis*, courts typically consider the amount of time spent on the extra work, the practical administrative difficulties of recording additional time, the regularity with which the additional work is performed, and the aggregate amount of compensable time." *Id.* (citing *Lindow*, 738 F.2d at 1062–63).

The Seventh Circuit has generally held that less than ten minutes of extra time is *de minimis*. *Kellar*, 664 F.3d at 177 (citing *Lindow*, 738 F.2d at 1064); *see also Mitchell v. JCG Indus., Inc.*, 745 F.3d 837, 845 (7th Cir. 2014) (concluding that a few minutes was *de minimis*); *Crawford v. Pro. Transp., Inc.*, No. 314CV00018, 2017 WL 1077660, at *6 (S.D. Ind. Mar. 22, 2017) ("Courts typically find an inspection lasting 10 minutes or less to be de minimis and not compensable under the FLSA."). Likewise, courts outside the Seventh Circuit have similarly concluded that the line for the *de minimis* exception is around ten minutes. *See, e.g.*, *Musticchi v. City of Little Rock*, 734 F. Supp. 2d 621, 635 (E.D. Ark. 2010) (concluding time required to complete a task was *de minimis* because it could "be accomplished in ten minutes or less"); *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509, 520 (E.D. Tex. 2005) ("[A]fter weighing the relevant factors, Plaintiffs' claims for ten minutes or less are *de minimis* as a matter of law."). Given the weight of this authority, even if some or all of the other factors weighed weakly in favor of Plaintiffs, the Court should nevertheless have considered the *de minimis* exception.

But the Court declined to do so, concluding that because employees generally spent more time on the clock than they were paid for, the rounding policy was not neutral under § 785.48(b) and so the *de minimis* exception could never apply. Dkt. No. 398 at 76. To come to this conclusion, the Court considered the aggregate underpayment and concluded that Woodman's "rounding policy systematically and significantly underpaid the plaintiffs over time." *Id.* at 73, 76–77. But these small underpayments should not have undermined the rounding policy's neutrality under the FLSA.

First, a rounding policy can still be neutral if it results in only a *de minimis* undercompensation. The Court erred by treating the neutrality and *de minimis* analyses as wholly distinct. "[T]he fact that the Department of Labor permits neutral rounding policies suggests minor underpayment does not violate the FLSA." *Laverenz v. Pioneer Metal Finishing, LLC*, 746 F. Supp. 3d 602, 618 (E.D. Wis. 2024). Courts have thus considered whether a rounding policy has only a *de minimis* effect on employees. For example, in *Vasquez v. Victor's Cafe 52nd St., Inc.*, the court concluded that "[i]n light of th[e] *de minimis* undercompensation, Defendants' policy was neutral in its application to Plaintiff." No. 18-CV-10844, 2019 WL 4688698, at *4 (S.D.N.Y. Sept. 26, 2019). This is because rounding policies are not required to apply in such a way as to ensure "that no employee ever los[es] a single cent over a pay period." *Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*, 821 F.3d 1069, 1077 (9th Cir. 2016). Rounding policies are thus still neutral "when the alleged underpayment at issue is such a small amount." *Adams v. Bloomberg L.P.*, No. 20-CV-7724, 2023 WL 5769492, at *6 (S.D.N.Y. Sept. 7, 2023). This "leav[es] room for a *de minimis* amount of variance." *Id.* (citation modified).

To conclude otherwise would override Department of Labor regulations allowing time-rounding policies. "Mandating that every employee must gain or break even over every pay period

misreads the text of the federal rounding regulation and vitiates the purpose and effectiveness of using rounding as a timekeeping method." *Corbin*, 821 F.3d at 1079. And since the loss to employees under Woodman's policy is minimal, the policy is neutral. *See Adams*, 2023 WL 5769492, at *6.

Second, the fact that employees may have been underpaid by meaningful amounts in the aggregate is not enough to conclude that the policy was not neutral. For example, when determining whether the *de minimis* exception applies, the Seventh Circuit has repeatedly looked to the day-to-day impacts of extra time, not the aggregate amount. In *Mitchell*, for example, the court considered the extra time spent "each day, or part of a day, separately." 745 F.3d at 851 (Wood, J., dissenting) (criticizing this approach). And in *Kellar*, the court considered how much extra time the employees were expected to work per day. 664 F.3d at 177. Indeed, any rounding policy considered in aggregate over a long enough time period will eventually result in a substantial shortfall to Plaintiffs. Just thirty seconds of extra time on the clock, over several years, would, in the long run, yield a substantial loss. But for courts to sift through such minute details and parse minute-by-minute through the workday would "convert federal judges into time-study professionals." *Mitchell*, 745 F.3d at 843.

Some courts have rejected the Seventh Circuit's position. *See, e.g.*, *Peterson v. Nelnet Diversified Sols., LLC*, 15 F.4th 1033, 1048 (10th Cir. 2021) (considering the total amount of money employees were underpaid over a year); *Houston v. Saint Luke's Health Sys., Inc.*, 76 F.4th 1145, 1151 (8th Cir. 2023) (determining that a policy is not neutral after considering the number of hours employees lost over several years). And at least one court in this Circuit has refused to hold that, as a matter of law, less than ten minutes of extra work was *de minimis*. *Blakes v. Ill. Bell Tel. Co.*, 77 F. Supp. 3d 776, 787 (N.D. Ill. 2015). But this disagreement is itself proof of the need

for certification. *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, No. CV1810675, 2021 WL 1040510, at *3 (D.N.J. Mar. 18, 2021) ("Substantial grounds for difference of opinion exist when the courts that have examined an issue reach conflicting and contradictory opinions upon the particular question of law." (citation modified)).

At the very least, the policy is facially neutral and whether it is neutral in practice when considered along with Woodman's other policies is still the subject of a genuine dispute of material fact. *Lott v. Recker Consulting, LLC*, 798 F. Supp. 3d 778, 806–07 (S.D. Ohio 2025). After all, there is evidence in the record demonstrating that employees generally benefitted from Woodman's rounding practice. Dkt. No. 341-6 at 9. And even the *Blakes* court held that there was a genuine dispute of material fact regarding whether the extra time was *de minimis*. 77 F. Supp. 3d at 787. So, the Court should not have ruled as a matter of law that the *de minimis* exception could not apply.

Again, given the weight of Seventh Circuit and persuasive authority, there is substantial ground for a difference of opinion since courts have differed in how they interpret § 785.48(b) and the *de minimis* exception. *See Gallagher*, 1992 WL 315218, at *6 (concluding that this element is satisfied because "courts have taken opposing positions on the issue"); *Panache Broad. of Pa., Inc.*, 1999 WL 1024560, at *5 (noting that certification is proper in part because both sides had strong arguments).

**III. An appeal will materially advance the ultimate termination of the litigation by simplifying the issues and substantially lowering the likelihood of a second trial following an appeal.**

Finally, an immediate appeal will materially advance the ultimate termination of the litigation. On this prong "a movant need not show that a reversal on appeal would actually end the litigation[, but only that] reversal would hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the

parties from needless expense." *Molock v. Whole Foods Mkt. Grp., Inc.*, 317 F. Supp. 3d 1, 6 (D.D.C. 2018). Granting an appeal here is proper because it would simplify the issues to be tried and avoid a potential second trial.

First, an interlocutory appeal will narrow and simplify the issues before trial. *See United States ex rel. Howard v. KBR, Inc.*, No. 11-4022, 2020 WL 7312180, at *1 (C.D. Ill. Dec. 11, 2020) (noting that a ruling in movant's favor would end the case); *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 439 (5th Cir. 2021) (deciding an appeal involving the FLSA under § 1292(b)). Indeed, narrowing the issues could substantially shorten and simplify the case "either by ending [parts of] this litigation at summary judgment or by providing resolution to a contested question that is certain to complicate any potential trial." *Shell v. Burlington N. Santa Fe Ry. Co.*, No. 15-CV-11040, 2018 WL 6061473, at *4 (N.D. Ill. Nov. 20, 2018); *see also Chamberlain v. Crown Asset Mgmt.*, 622 F. Supp. 3d 1068, 1072 (D. Utah 2022) (granting a motion to certify "because it would greatly clarify the law"). If the Seventh Circuit finds in Woodman's favor on the walking and rounding claims, the trial on damages would only involve the nondiscretionary bonuses, a far simpler issue. This would "shorten the litigation in terms of narrowing the issues" as well as "shorten[ing] the length of trial." *United States v. Kmart Corp.*, No. 12-CV-881, 2015 WL 11181734, at *3 (S.D. Ill. Jan. 12, 2015). After all, "[a]ppeals are frequently certified from orders—particularly those granting summary judgment—that establish some or all issues of liability, leaving other matters open for further proceedings." Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3931 (3d ed.). This is because determination of these issues "directly bears on the potential outcome of settlement proceedings and the scope of damages." *Thomas v. Maximus, Inc.*, No. 3:21CV498, 2022 WL 1482008, at *6 (E.D. Va. May 10, 2022) (certifying an appeal in an

FLSA case); *Richard v. Flowers Foods, Inc.*, No. CV 15-2557, 2021 WL 4887978, at *2 (W.D. La. Oct. 18, 2021) (same).

Second, clarifying and confirming the issues before trial would also prevent the parties and the Court from conducting a second trial after an appeal. *See Gallagher*, 1992 WL 315218, at *5; *United States v. Dish Network, LLC*, No. 09-3073, 2013 WL 1964812, at *2 (C.D. Ill. May 10, 2013). If the Seventh Circuit were to reverse, there would need to be a retrial on damages, causing more delay and more costs. Avoiding this weighs heavily in favor of granting the motion. *See Delock v. Securitas Sec. Servs. USA, Inc.*, 883 F. Supp. 2d 784, 792 (E.D. Ark. 2012) ("[A]fter the Court of Appeals reverses and returns the case for adjudication . . . the parties will have to start over. That long road would waste everyone's scarce resources."); *Dalie v. Pulte Home Corp.*, 636 F. Supp. 2d 1025, 1030 (E.D. Cal. 2009) (Deciding legal issues "at an early enough stage in the litigation [would] avoid the possibility of two significantly duplicative trials if the court's ruling is reversed."); *Kuzinski v. Schering Corp.*, 614 F. Supp. 2d 247, 251 (D. Conn. 2009) ("[P]ermitting Defendant to appeal now would ensure that that significant expenditure of resources would not be futile."); *Fla. E. Coast Ry. Co. v. CSX Transp., Inc.*, No. 91 C 7063, 1993 WL 57534, at *2 (N.D. Ill. Mar. 4, 1993) (noting that a potential second trial following reversal would waste resources).

Therefore, certification of this case for interlocutory appeal is appropriate.

## CONCLUSION

This Court should certify its order granting in part and denying in part summary judgment (Dkt. No. 398) for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated this 4th day of November, 2026.

HUSCH BLACKWELL LLP

/s/ *Geoffrey S. Trotier*

Geoffrey S. Trotier, WI State Bar No. 1047083
Erik K. Eisenmann, WI State Bar No. 1081410
511 North Broadway, Suite 1100
Milwaukee, Wisconsin 53202
Telephone: 414.273.2100
Fax: 414.223.5000
Email:geoff.trotier@huschblackwell.com
Email: erik.eisenmann@huschblackwell.com

Cooper Page, TX State Bar No. 24119728
1900 North Pearl Street, Suite 1800
Dallas, TX 75201
Telephone: 214.999.6100
Fax: 214.999.6170
Email: cooper.page@huschblackwell.com

Attorneys for Defendant Woodman's Food Market, Inc.