UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

JESSE WYNGAARD,
on behalf of himself and
all others similarly situated,

Case No. 19-CV-0493

Plaintiff,

v.

WOODMAN'S FOOD MARKET, INC.

Defendant.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION**

NOW COMES Plaintiff, Jesse Wyngaard, on behalf of himself and all others similarly situated, by and through his attorneys, Walcheske & Luzi, LLC, and as and for *Plaintiff's Opposition to Defendant's Motion to Compel Discovery* submits the following for this Court's consideration.

**PROCEDURAL HISTORY**

On April 5, 2019, Plaintiff, Jesse Wyngaard, brought the instant case action against Defendant, Woodman's Food Market, Inc., alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), and Wisconsin's Wage Payment and Collection Laws, WIS. STAT. § 109.01 *et seq*., WIS. STAT. § 104.01 *et seq*., WIS. STAT. § 103.001 *et seq*., and WIS. ADMIN. CODE § DWD 274.01 *et seq*., (collectively "WWPCL"). (ECF No. 1.)

On December 20, 2021, this Court consolidated this action with two separate actions pending in this District, *i.e., Hunter, et al. v. Woodman's Food Market, Inc.,* Case No. 21-cv-94 and *Robertson, et al. v. Woodman's Food Market, Inc.,* Case No. 22-cv-207, through summary judgment or other dispositive motion. *Hunter* and *Robertson* involve substantially similar claims against Defendant, but

with added claims under the Illinois Minimum Wage Law, 820 ILCS 105/12*, et seq*. ("IMWL") and Illinois' Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.,* and ILL. AMIN. CODE 300, *et seq*. ("IWPCA"). (ECF Nos. 248-249, *passim*.)

Specifically, the consolidated plaintiffs alleged that Defendant failed to compensate hourly-paid, non-exempt employees ("Store Employees") for all compensable hours worked and/or work performed each workweek including at the correct and lawful overtime premium rate pay for all hours worked in excess of forty (40) in a workweek by: (1) excluding Attendance Bonuses, New Hire Bonuses, and Employee Appreciation Holiday Bonuses, from Store Employees' regular rates of pay when calculating overtime premium compensation during workweeks in which said employees worked in excess of forty (40) hours in violation of the FLSA, WWPCL, and IMWL; (2) improperly and unlawfully shaving or otherwise reducing Store Employees' pre-, post-, and in-shift hours worked and/or work performed to its benefit and to Store Employees' detriment in violation of the FLSA, WWPCL, IMWL and IWPCA; and (3) failing to compensate Wisconsin Store Employees for compensable meal periods and/or rest breaks lasting less than thirty (30) consecutive minutes in duration in violation of the WWPCL. (ECF Nos. 247-249.)

On October 4, 2023, the parties filed their Stipulation to Certify a Class and Collective Action and to Designate Class Representatives and Class Counsel. (ECF No. 291.) Therein, the parties agreed that the consolidated actions met the criteria for collective and class treatment and should be certified and maintained as collective and class actions pursuant to 29 U.S.C. § 216(b) and FED. R. CIV. P. 23, respectively. (*Id.*) On October 6, 2026, the Court approved the same.

By November 15, 2024, the parties had filed their cross-motions for summary judgment, and on September 30, 2026, this Court issued an 80-page decision, granting in part and denying in part the parties' cross-motions for summary judgment pursuant to FED. R. CIV. P. 56. (ECF No. 398.)

Relevant to the present motion, this Court concluded as follows:

> **V. The FLSA and State Law Meal Period and Time-shaving Claims**
>
> A. Walking Time
>
> Under the FLSA, an employee must be compensated for "principal activities." *Chagoya v. City Of Chicago*, 992 F.3d 607, 617-18 (7th Cir. 2021). Principal activities are the activities employees are employed to do. 29 C.F.R. §790.8(a). A principal activity also includes all activities that are "integral and indispensable" to the activities the employee is hired to perform. *Chagoya*, 992 F.3d at 618; 29 C.F.R. §790.8(b). An activity is integral and indispensable to the principal activities if "it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform those activities." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014).
>
> ***
>
> Here, there is no genuine question of material fact as to whether providing exceptional customer service is what the defendant hired the employees to do, and no question that providing exceptional customer service is a principal activity…. It is undisputed that customer service is a primary job responsibility for the defendant's employees.
>
> ***
>
> Although the defendants dispute the frequency of occurrence, there is no dispute that the defendant's employees encountered customers on their walks. The evidence in the record shows that the employees were, at the very least, trained and required to stop and talk to customers when they encountered them. Dkt. No. 349 at 2; Dkt. No. 359 at 1. The defendant's argument about the frequency of customer interactions on the walk, even if the court were to accept it, does not change this undisputed fact. The principal activity here is interacting with customers during walks to and from the time clock. The fact that customer interactions did not occur during every walk does not transform the character of the activity itself, which the defendant considers to be an essential element of employees' job responsibilities.
>
> The defendant characterizes the walking time as "duty free" and merely pre- and postliminary to the actual performance of the employees' principal activity which, it argues, takes place only at their assigned workstations. Dkt. No. 341 at 13-14. The defendant's arguments are unpersuasive. The defendant downplays its own emphasis on customer service in its hiring, training and practices. The undisputed facts demonstrate, unequivocally, that the defendant considered exceptional customer service a principal activity for its employees.
>
> Customer service is an essential part of their jobs. Indeed, the defendant considered exceptional customer service the "lifeblood" of its stores. Whether

the defendant's employees provide customer service at their work stations or during their walk to and from the time clock does not change the character of the activity. There is no genuine issue of material fact on this issue, which means that summary judgment in the plaintiffs' favor on this issue for purposes of the FLSA is warranted.

***

C. The FLSA, WWPCL, IWPCA and IMWL Time-shaving Claims

The *de minimis* doctrine "allows employers to disregard otherwise compensable work when only a few seconds or minutes of work beyond the scheduled working hours are in dispute." *Kellar*, 664 F.3d at 176 (citing *Singh v. City of New York*, 524 F.3d 361, 370 (2d Cir. 2008)). "When applying the *de minimis* rule to otherwise compensable time, the following considerations are appropriate: (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984)…. The defendant bears the burden of showing that the doctrine applies. See *Kellar*, 664 F.3d at 176. "The *de minimis* exception is not a broad rule granting employees some number of free minutes of labor per day." *Eddings v. Health Net, Inc.*, Case No. CV 10-1744, 2012 WL 994617, at *5 (C.D. Cal. Mar. 23, 2012).

***

The defendant assumes that the doctrine is some kind of buffer for employers that allows them to underpay their employees up to a certain amount as an offset for *de minimis*. But the doctrine is about dealing with periods of compensable time that are not captured; it is applied to periods like pre- and post-shift activities before or after employees have clocked in. The defendant seeks to apply it to a period during which the employees are clocked in and—they admit for argument—is compensable. The time is captured. There is no need for the *de minimis* doctrine. The defendant essentially is repackaging its primary activity argument that the walking time should not be compensated into the *de minimis* doctrine; the court does not accept that effort.

The Court further ordered that the cases be "unconsolidated" and directed the clerk to reassign *Hunter* and *Robinson* back to Judge Ludwig and Judge Stadtmueller, respectively, which the clerk has done. (ECF No. 398, p. 79.)

Thirty-Five (35) days after this Court entered its decision on the parties' cross-motions for summary judgment, Defendant filed a motion pursuant to 28 U.S.C. § 1292(b) seeking an order certifying the Court's decision for interlocutory appeal ("Motion"). (ECF No. 399.)

**ARGUMENT**

"When a district judge … shall be of the opinion that [an order not otherwise appealable] involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [s]he shall so state in writing in such order." 28 U.S.C. § 1292(b).

28 U.S.C. § 1292(b) sets forth four (4) statutory criteria – all of which must be met – for granting a section 1292(b) petition: (1) there must be a question of law; (2) it must be controlling; (3) it must be contestable; and (4) its resolution must promise to speed up the litigation. *Ahrenholz v. Bd. of Trs. of Univ. of Illinois,* 219 F.3d 674, 675–76 (7th Cir. 2000). In addition to the statutory criteria, "the petition must be filed in the district court within a reasonable time after the order sought to be appealed." *Richardson Electronics, Ltd. v. Panache Broadcasting of Pennsylvania, Inc.,* 202 F.3d 957, 958 (7th Cir. 2000).

Still, "[i]nterlocutory appeals are frowned on in the federal judicial system." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). Consequently, "[m]ost interlocutory orders do not meet this test." *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008); *see also, Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 10–11 (1980) ("Certification is the exception and not the rule.") Indeed, "a movant seeking an interlocutory appeal [under 28 U.S.C. § 1292(b)] has a heavy burden to show that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475 (1978).

The record dictates that this Court deny Defendant's Motion for two reasons. First, Defendant's Motion is untimely. Second and as set forth in greater detail herein, Defendant failed to carry its burden to establish the statutory criteria under 28 U.S.C. § 1292(b).

## I. DEFENDANT'S MOTION IS UNTIMELY

As noted above, Defendant was required to bring its Motion "within a reasonable time after the order sought to be appealed." *Richardson Electronics*, 202 F.3d at 958. "In the context of requests for interlocutory appeals, timely requests for certification are calculated in days, not months." *Fabricant v. Sears Roebuck & Co.*, 2001 WL 883303, at *1 (S.D. Fla. Jan. 29, 2001) (unjustified delay of forty-six days rendered motion untimely).

For example, in *Morton College Bd. of Trustees v. Town of Cicero*, the court determined that a petition under 28 U.S.C. § 1292(b) which was brought thirty (30) days after the underlying order was untimely. 25 F. Supp. 2d 882, 884 (N.D. Ill. 1998). Notably, in that case, the movant failed to establish a sufficient justification for the delay. *Id.* at 885. The court concluded "it would be an abuse of the court's power to amend the order at this late date" because "the court would be taking an action that would undermine the ten-day limitation period of § 1292(b)." *Id.*

Here, Defendant brought its Motion thirty-five (35) days after the Court entered its decision on the parties' cross motions for summary judgment. In its brief, Defendant fails to offer any justification for such a lengthy delay. Therefore, Defendant's motion is untimely. *Richardson Electronics*, 202 F.3d at 958. This Court should summarily deny Defendant's Motion.

## II. DEFENDANT FAILED TO MEET ITS BURDEN TO ESTABLISH THE STATUTORY CRITERIA UNDER 28 U.S.C. § 1292(B)

Defendant has the burden to meet each of the four (4) statutory criteria under 28 U.S.C. § 1292(b). Here, Defendant failed to satisfy its burden. The issues raised by Defendant for appeal do not present questions of *pure* law. Likewise, the questions presented are neither controlling nor

contestable. Moreover, an immediate appeal would not hasten the disposition of the litigation. *Ahrenholz,* 219 F.3d at 675–76. For these reasons, this Court should deny Defendant's Motion.

**A. The Issues Raised by Defendant Do Not Present Questions of Pure Law**

Defendant must first establish that the issues raised by Defendant for appeal present a "question of law." 28 U.S.C. § 1292(b). Under the statute, a "question of law" refers to a "pure question of law rather than merely to an issue that might be free from a factual contest." *Ahrenholz,* 219 F.3d at 676–77.

A *pure* question of law can be decided "quickly and cleanly without having to study the record." *Id.*; *see also, In re Text Message Antitrust Litig.,* 630 F.3d 622, 625–26 (7th Cir. 2010) (recognizing that the court of appeals can decide a pure question of law more easily and efficiently than a murky factual dispute, which requires hunting through the record). Further, "[p]ure questions of law typically involve contests not about what occurred, or why an action was taken or omitted, but [not] disputes about the substance and clarity of pre-existing law." *Brown v. Smith*, 827 F.3d 609, 613 (7th Cir. 2016) (citing, *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011)).

"[D]enial of summary judgment is a paradigmatic example of an interlocutory order that normally is not appealable." *Ahrenholz,* 219 F.3d at 676. Because each denial of summary judgment ostensibly presents a question of law, *i.e.* whether the opponent of the motion has raised a genuine issue of material fact, "it might seem that the statutory criteria for an immediate appeal would be satisfied in every case in which summary judgment was denied;" however, "that cannot be right." *Id.* "Section 28 U.S.C. § 1292(b) was not intended to make denials of summary judgment routinely appealable." *Id.* Accordingly, "question of law" does not mean "whether summary judgment should be granted." *Id.* at 677.

Defendant asks this Court to certify two (2) issues on appeal. First, "Is walking time compensable as a matter of law under 29 U.S.C. § 254(a) when employees interact with customers while walking to and from their workstation?" Second, "Is a time-rounding policy, as a matter of law, not neutral under 29 C.F.R. § 785.48(b) when it results in only a *de minimis* loss to employees?" Neither issue presents a question of pure law which should be certified on appeal.

1. Whether the walk time at issue in this case is compensable is a mixed question of law and fact

Although Defendant contends the first issue which it asks this Court to certify for interlocutory appeal presents a question of law, *i.e.* whether "walking time [is] compensable as a matter of law," the issue presented is a mixed question of law and fact.

Under the FLSA, "walking … to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" is generally not compensable. 29 U.S.C. § 254(a)(2). However, what activities constitute "principal activities," and where the "actual place of performance" of such "principal activities" is located are "context specific" inquiries. *IBP, Inc. v. Alvarez,* 546 U.S. 21, 33-35 (2005); *see also, Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004)) (recognizing that the nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law).

At summary judgment, the consolidated plaintiffs argued that in the context of *this case,* exceptional customer service is a "principal activity," and the "actual place of performance" of customer service is "any area in Defendant's Stores where Store Employees may encounter a customer." (ECF No. 382, pp. 11-12.) Conversely, Defendant contended that "Woodman's assigns each of its employees to an 'actual place of performance of [their] principal activity,' which is their *workstation*." (ECF No. 341, p. 13) (emphasis added.)

Based upon *the factual record,* the Court ruled:

> The defendant characterizes the walking time as "duty free" and merely pre- and postliminary to the actual performance of the employees' principal activity which, it argues, takes place only at their assigned workstations. Dkt. No. 341 at 13-14. The defendant's arguments are unpersuasive. The defendant downplays its own emphasis on customer service in its hiring, training and practices. The **undisputed facts** demonstrate, unequivocally, that the defendant considered exceptional customer service a principal activity for its employees.

This Court's decision was "context specific," tethered tightly to the voluminous factual record presented on summary judgment. Defendant tacitly admits as much. For example, Defendant challenges this Court's reliance on *Finnigan v. Metropolitan Transportation Authority,* 19-CV-0516, 2025 WL 963998 (E.D.N.Y. Mar. 31, 2025). (ECF No. 400, p. 8.) In doings so, Defendant opines that "[t]he evidence here is much closer and disputed," and "[j]ust because there was a genuine dispute of material fact in that case, does not mean that there is no genuine dispute of material fact in this case." (*Id.*) Defendant's argument reveals the inescapable conclusion that the issue Defendant seeks to certify for appeal depends almost entirely upon the *factual record*.[1]

At its core, Defendant's challenge is whether this Court erroneously concluded that "there is a genuine dispute of material fact" which entitles consolidated plaintiffs to judgment as a matter of law. (*Id.* at p. 9.) To decide that question, the Seventh Circuit would be required to review the extensive evidentiary record to determine whether genuine issues of material fact exist which

---

[1] Defendant's complaint regarding the frequency of customer interactions while walking is obtuse. Not only would the frequency of customer interactions present a *factual* question unsuited for interlocutory appeal, but the frequency of customer interactions was not dispositive to the Court's determination. (ECF No. 398, p. 49.) The Court correctly concluded that (1) customer service is a principal activity, and (2) the place Store Employees actually perform customer service is not a specified workstation. (*Id.*) Rather, Store Employees performed their principal activities *throughout* Defendant's Stores. Whether Store Employees were actively engaged by customers does not render the time noncompensable. 29 C.F.R. §790.7(h); *see also, Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) ("[T]hey were under orders, liable to be called upon at any moment, and not at liberty to go away. They were nonetheless on duty when inactive. Their duty was to stand and wait.")

preclude judgment as a matter of law. For that reason, Defendant has failed to satisfy 28 U.S.C. § 1292(b). *Ahrenholz,* 219 F.3d at 676. This Court should deny Defendant's Motion.

2. <u>Whether the *de minimis* doctrine may be applied to the undisputed facts in this case is a mixed question of law and fact</u>

The second question which Defendant asks this Court to certify fares no better than its first. Whether the *de minimis* doctrine may be applied in a particular case presents a mixed question of law and fact. *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984) (noting that "[t]here is no precise amount of time that may be denied compensation as *de minimis*" and "common sense must be applied to the facts of each case.")

As noted by the Court in its decision,

> "When applying the *de minimis* rule to otherwise compensable time, the following considerations are appropriate: (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984).... The defendant bears the burden of showing that the doctrine applies. See *Kellar*, 664 F.3d at 176. "The *de minimis* exception is not a broad rule granting employees some number of free minutes of labor per day." *Eddings v. Health Net, Inc.*, Case No. CV 10-1744, 2012 WL 994617, at *5 (C.D. Cal. Mar. 23, 2012).

Here, after analyzing the factual record on summary judgment, this Court concluded that "the defendant has not carried its burden to show that the *de minimis* doctrine applies." (ECF No. 398, p. 77.) Specifically, the Court found not only that "[t]he time is captured," but that the "defendant's rounding policy systematically and significantly underpaid the plaintiffs over time." (*Id.* at pp. 76-77.) In short, the Court was not persuaded by Defendant's arguments to the contrary based upon the undisputed facts of the case. (*Id.* at p. 74.)

Defendant seemingly acknowledges that the *de minimis* doctrine's application is fact intensive. "[E]ven the *Blakes* court held that there was a genuine dispute of material fact regarding whether the extra time was *de minimis*.... So, the Court should not have ruled as a matter of law that

the *de minimis* exception could not apply." Again, Defendant's argument in this regard betrays its suggestion that the issue it seeks to appeal is a question of *pure* law.

Whether the *de minimis* doctrine applies to a set of facts is a mixed question of law and fact. *Lindow*, 738 F.2d at 1062. Based upon the extensive record before this Court on summary judgment, the Court concluded that Defendant had not carried its burden to demonstrate that the *de minimis* doctrine applied. An appeal of the Court's decision would require the Seventh Circuit to scour the voluminous record at summary judgment to determine whether genuine issues of material fact exist which preclude judgment as a matter of law. For that reason, Defendant has failed to satisfy 28 U.S.C. § 1292(b). *Ahrenholz,* 219 F.3d at 676. This Court should deny Defendant's Motion.

**B. The Issues Raised by Defendant Do Not Present Questions of Pure Law That Are Controlling and Contestable**

Because the issues Defendant identified do not present questions of *pure* law, this Court's inquiry should end. *Ahrenholz,* 219 F.3d at 675–76. Assuming *arguendo* that the issues involve questions of *pure* law – they do not – Defendant must next establish that the issues raised by Defendant for appeal present "controlling question[s]" for which "there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b).

Congress did not specifically define what it meant by "controlling." However, the Seventh Circuit has cited favorably to "the rule that a question is controlling … if interlocutory reversal might save time for the district court, and time and expense for the litigants." *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991).

The Seventh Circuit has also determined that a "controlling" question of law typically *does not* include "routine applications of well-settled legal standards." *In re Text Messaging Antitrust*

*Litig.*, 630 F.3d 622, 626 (7th Cir. 2010).[2] Indeed, "[t]he main task of an appellate court, which is to maintain the coherence, uniformity, and predictability of the law, is **not** engaged by review of the application of a legal standard to a unique, nonrecurring set of particular facts." 630 F.3d at 625 (emphasis added).

In similar vein, a question of law is not "contestable" unless there is "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). This means, "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." 3 Federal Procedure, Lawyers Edition § 3:212 (2010). "That settled law might be applied differently does not establish a substantial ground for difference of opinion." *Couch v. Telescope Inc.,* 611 F.3d 629, 633 (9th Cir. 2010)

As noted above, the questions presented by Defendant require the application of unique and nonrecurring undisputed facts to well-settled legal principles. Defendant's "strong disagreement" with this Court's ruling on summary judgment is insufficient for there to be a "substantial ground for difference of opinion." *Id.* Moreover, reversal would not save time for the district court, and time and expense for the litigants. Instead, as explored in greater detail below, an immediate appeal would not materially advance the litigation.

The issues raised by Defendant for appeal do not present "controlling" or "contestable" questions of *pure* law. 28 U.S.C. § 1292(b). For that reason, Defendant has failed to satisfy 28 U.S.C. § 1292(b). *Ahrenholz*, 219 F.3d at 676. This Court should deny Defendant's Motion.

### C. The Issues Raised by Defendant Will Not Materially Advance the Litigation

Finally, Defendant must establish that "an immediate appeal from the order may materially

[2] Defendant cites this case for the proposition that "[a] controlling question of law can also refer to 'the application of a legal standard.'" (ECF No. 400, p. 4.) Defendant's reading is simply incorrect.

advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "This is not a difficult requirement to understand. It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir.2004). An appeal does not materially advance the ultimate termination of the litigation if the same parties and issues would remain in district court regardless of resolution of issues on appeal. *Id.* (citing *Ashmore v. Northeast Petrol. Div.,* 855 F.Supp. 438, 440 (D.Me.1994)). Defendant's appeal will not materially advance the ultimate termination of the litigation for several reasons.

To begin, Defendant contends that an appeal will "narrow and simplify the issues at trial." (ECF No. 400, p. 15.) Defendant's argument is without merit. At present, the parties may immediately proceed to trial. The focus of the trials will be damages. In that regard, the evidence is relatively undisputed because the damages are largely a matter of arithmetic. (*See e.g.,* ECF No. 398, p. 72) ("Taking away the walking time, Goldberg's conclusions are identical to Bero's.") There is no simpler issue to try than what amount of damages would fully and fairly compensate Store Employees for their unpaid wages.

Next, Defendant assumes that "if the Seventh Circuit finds in Woodman's favor on the walking and rounding claims, the trial on damages would only involve the nondiscretionary bonuses, a far simpler issue." (ECF No. 15.) Defendant's argument is inapt for two reasons.

First, the Court did not separately consider the differences between state law and federal law with respect to consolidated plaintiffs' timeshaving claims. (ECF No. 398, p. 77.) As a result, even if the Seventh Circuit reverses on appeal, this Court would be required to address specific differences between state law and federal law at summary judgment with respect to the WWPCL Time-shaving Subclass, the IWPCA Timeshaving Subclass, and IMWL Time-shaving Subclass. To that end, if this

Court agrees with Plaintiff, then a trial on damages would not materially change because the damages – Store Employees' unpaid straight time and overtime wages – would be substantially the same.

Second, even "if the Seventh Circuit finds in Woodman's favor on the walking and rounding claims" and even if this Court then concluded that state and federal law are identical in all respects, Defendant *still* would not be relieved of liability. With respect to the Wisconsin Meal Period Subclass, Defendant conceded at summary judgment that after adding *four (4) minutes* of walk time to each meal period taken by Wisconsin Store Employees, Defendant *still* violated Wisconsin law by depriving Wisconsin Store Employees of more than 9,600 hours of compensable work (1.2% of 1,600,000 meal breaks). (ECF No. 388, p. 16.) As to the WWPCL Time-shaving Subclass, the IWPCA Timeshaving Subclass, and IMWL Time-shaving Subclass, Defendant acknowledges that the net effect of rounding exceeds five (5) minutes for 10.7% of shifts. (ECF No. 341, p. 17.) Thus, even when adding *four (4) minutes* of walk time to each shift, at least 10.7% of all shifts resulted in an underpayment of wages.

Last, Defendant overstates the certainty of a second trial if this Court is ultimately reversed following entry of judgment. At the direction of the Seventh Circuit, this Court may be well positioned to enter a remittitur, reducing damages (either in whole or in part) without the need for a separate trial.

In summary, Defendant failed to meet its burden that an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). A trial on damages will inevitably follow even if Defendant is successful on appeal. Because damages are largely a matter of arithmetic, if this Court is ultimately reversed, issuance of a remittitur is just as likely as a second trial or further protracted litigation.

## CONCLUSION

For the aforementioned reasons, Defendant's Motion. Not only is Defendant's Motion untimely, but Defendant failed to carry its burden to establish the statutory criteria under 28 U.S.C. § 1292(b).

Dated this 12th day of November, 2026

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

**s/ *David M. Potteiger***
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
David M. Potteiger, State Bar No. 1067009

WALCHESKE & LUZI, LLC
1200 N. Mayfair Road, Suite 270
Wauwatosa, Wisconsin 53226
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-mail: jwalcheske@walcheskeluzi.com
E-mail: sluzi@walcheskeluzi.com
E-mail: dpotteiger@walcheskeluzi.com